May be seated. This is 4090875, People v. Chaitin, that sounds correct, and L. Cook. Welcome back, counsel, Mr. Delcomen and Mr. McNeil. Always a pleasure to see you back here. Okay, Mr. Delcomen, you may proceed, sir. Thank you, Your Honor. Good afternoon. May it please the Court. Counsel. Just as a broad overview, I'm going to cover two arguments today, the first two arguments in my brief in that order, whether Mr. Cook was a proximate cause and, in turn, whether the jury was properly instructed. I don't have any, just as a heads up to this Court, I don't have any intention of discussing my third argument, which is the one I'm going to cover. First, though, as just sort of a general opening, I'd like to discuss just real briefly the video. I'm assuming this Court's had the opportunity to view the State's, I don't know, animation, simulation video, what happened during the events that led us here today. And the reason I say that is because I think that it will give the Court a good overview of just how quickly and almost contemporaneously all of this happened, everything that we're going to talk about today, how quickly all of this happened. I think sometimes reading it on paper can maybe arguably give the wrong impression, based at least on that video. And I think the video shows correctly that as the officer is passing these cars that are in discussion, they pull over, that is when Taylor is pulling out, there's the initial collision, and then, boom, right after that we have the second collision at particularly at issue here. So I just wanted to mention that, this Court could keep that in mind as we progress today. Regarding proximate cause, the crux of my argument involves the other driver, Taylor, and whether he was, essentially my argument is, that he was an independent intervening cause, and if Mr. Cook had liability, that Taylor's Act severed any liability that Mr. Cook had. Case law, I think, is clear, at least on this general proposition of laws I just stated. An unforeseeable intervening cause, which is independent of the defendant's negligent or criminal act, can sever liability. So I think, in turn, the question is, well, the first question is, was Taylor's act of driving and downcoming traffic truly an intervening cause or not? As I argued in my brief, I think, logically, the answer can be yes, based on when does liability attach. Here, we're talking about a crime which is driving under the influence. Mr. Cook started driving under the influence when he began driving. Taylor's Act occurred after that, so in that context, I think it can reasonably be viewed as an intervening cause. I think the next question, then, is whether this was Taylor's Act, whether it was foreseeable or unforeseeable. I discussed this in my brief a little bit, this distinction between something that's generally foreseeable and also whether the manner in which the harm occurred is unforeseeable. But another key, I think, in this portion of the analysis is whether it was related to the defendant's conduct. The Supreme Court has talked about this, and what the Supreme Court has said is, whether the intervening cause was of a type that a reasonable person would see as a likely result of his or her conduct. And you're not an independent intervening cause if you've created that intervening cause. Like, for example, if Mr. Cook had nudged Taylor into the oncoming police car, obviously you can't argue in that situation that there was an intervening cause because he created it. But in this situation, he had nothing to do with it. It was completely independent. If there was a reason for Taylor driving into the other lane, it was arguably his own intoxication. But certainly, there was no dispute at trial. It was nothing that Mr. Cook did. No action he took. Nothing related to his impairment. Nothing related to him at all, period. It was truly an independent intervening cause. And that goes to independent. It goes to, I mean, I think these are all kind of together there. And this is kind of what I wanted to get at. I think that there's a distinction to be made between car accidents, which are generally foreseeable, and what happened here in this intervening cause, which is not generally foreseeable. I don't think driving into oncoming traffic, especially into an oncoming police car, is foreseeable. I wanted to address also – You know, it seems to me that the key term here is superseding. The fact that the time, that as a matter of time, the intervening cause happened before the defendant hit the officer, that's not all that important. Couldn't the jury reasonably have found that a sober driver would have pulled off the road before all this happened? Based on the failure to yield statute, or as was the state's theory of trial, is that what – Based on just the way things happen when you see a police car coming at you. Well, I think, is it more prudent to pull onto the shoulder of the road than to stay in the roadway? I think it's hard to say no to that. But on the other hand, I don't think he was required to pull off onto the shoulder pursuant to the failure to yield statute. The other cars pulled over, and that's something that's shown on the video. The other cars pulled over. My argument is that it's, again, almost contemporaneous. So this is not a situation where we see a – The other cars pulled over, but the defendant didn't. Couldn't the jury say, hey, if the defendant had not been drunk, he would have acted differently? He would have pulled over? I think that's what they did say. And I think I'll answer this in more detail when I talk about whether the jury is properly instructed or not. But I don't think that just the fact that the other cars pulled over as the officer was passing, that in and of itself does not mean that Mr. Cook needed to pull over. But the other thing is – The question is, was the jury out in left field when they made that decision? Could any reasonable person have come up with the conclusion the jury came up with? Based on the way the jury was instructed, I would say – Okay. So you're giving up on your first argument. You're switching to an instruction argument. Well, no. I mean, frankly, I think the two arguments go together because I think that the first argument is – because there are a couple of things here. I'm not conceding that he needed to pull off off the road. But even if he did need to pull off the road, then we still have – then that – we would say that liability then attaches. But if liability can attach, but liability can still be severed, which then brings us to the second argument about whether the jury was properly instructed on that issue or not. So I don't – I mean, I don't see the two. I see them, I guess, as being more closely related than that. If the jury didn't believe that he needed to pull off, then they would have certainly said – I think they would have said no liability at all. But they could have answered the question that we think he needed to pull off, but we have a superseding cause here, had they still been instructed, that is going to sever the liability. Regarding this statute – well, there's actually another point before I touch on that. There's another point that I want to make here. And this is a crucial piece of evidence, I think, in this case. Had he been pulled off the road, there still would have been an impact. There still would have been a collision. That's the state's evidence. That's not the defense theory of the case. That's the state's evidence. Now, would it have been fatal? The state's accident reconstruction expert theorized that maybe it wouldn't have been, but the officer's car was half on and half off of the road, basically, when the – at the time of the collision with Mr. Cook's car. Was there any contrary expert testimony? No. Could the jury credit that testimony? Well, I predicted credit testimony that the collision would have been – was unavoidable. Or that it might not have been as serious? Yeah, I see – yes. Yeah, I think they could have. Isn't that a difference and a distinction? Between? Between the argument you're making about, hey, it's all the same thing anyway. I mean, would it have happened whether they pulled off or not? Well, I guess I'm not sure what you're asking. I think the jury could have. I mean, there was no contrary testimony. And the jury – are you saying could the jury have believed that the accident would have been fatal? Maybe it wouldn't have been fatal. I don't know that they could have believed it on – as far as, like, beyond a reasonable doubt, I don't think so because you said, well, maybe. Well, that's some expert testimony that would support that. Well, arguably, except he doesn't have any medical – I mean, he's an accident reconstructionist. I'm not sure that he's the one that would even be qualified to say. And I had to ask the medical examiner, and she says, I certainly think. That's testimony before the jury, though. That's what they heard. Yes. I guess what I'll say is I don't think it was – I don't know how much weight you can give it when basically it's the accident reconstruction expert that says, well, maybe the accident would not have been fatal. But I think the important thing is here that the collision was going to occur no matter what. So was he supposed to be off to the side of the road? The jury can't answer. They could have answered yes. But even if they did, then we get to the second issue. But there would have been a collision anyway. I mean, these cars were moving – he was still moving – the defendant was still moving 38 miles an hour. And the officer was moving at – I think it was 73 miles an hour at the point of impact still. And, again, it was also undisputed that there was only 1.23 seconds from the time of the impact between Taylor and the defendant to the time that the officer and the defendant collided with one another. So, again, we're looking at something that just was boom, boom, boom, just right like that. Now, I think that if the state's theory of the case were that he – I don't think they charged him with – or I don't think they could have charged him with – let me rephrase that. I don't think he would have been convicted had they charged him with failing to take, you know, whatever the phrase is, evasive action to avoid an accident. Their theory of the case was that he was required by law to be on the side of the road. And I would answer that. I would say that that's not true because I don't think that the statute, this failure to yield statute, required him to be off the road on the shoulder of the road. I'm amazed at the argument that everything I do when I'm driving has to be required by statute. But I'm not – am I not required to act reasonably under all the circumstances, whether there's a statute there or not? Yes, I would say so, and that's where it would come into play if they would have – if their theory of the case were such that he didn't act reasonably to avoid an accident. But that wasn't their theory. Their theory was that he was required by statute to be pulled off the road. And again, I don't think the statute supports that theory of the case. One way that courts have addressed this is by cause and condition, and in civil cases. And I think, Justice Cook, this goes a little bit to what you were saying about superseding, perhaps. Negligence, I think, can be – cases say negligence can be a condition, but it doesn't – it's not necessarily a cause of the harm. And I don't know that that's the perfect example for what happened here, but I think the idea translates. Whereas, even if the jury believed that he should have been pulled off the road, is he just – is he a cause or is he a condition? I think no one would dispute the fact that Taylor sort of, we can just say in layman's terms, was the cause of the accident. Taylor clearly caused the accident.  It's right. So, I think this is a lot more analogous to the cause and condition where we have, like in Gallimond, for example, that there was a tanker truck – I cited that in my brief – illegally parked, which – and there was no dispute that it was illegally parked, so there was negligence, but the Supreme Court held that it was not a cause. A pedestrian passed in front of the truck and was struck by an oncoming car. And what the Supreme Court held was that it wasn't – the tanker truck being illegally parked was not a cause of the harm, but it was a condition. And I think that that's kind of what we have here. Under the circumstances of this case, was it necessary for the trial court to give an instruction on proximate cause? Was it necessary for them to give any instruction on proximate cause? Yes. Yes, absolutely. Okay. I reviewed again your argument, too, in which you said the instruction wasn't – it was not a fair trial because the instruction was insufficient to correctly inform the jury of the proceedability requirement. The instruction given was IPI 2328A, wasn't that? Yes, I think. I don't remember the number off the top of my head, but I think so. It was an IPI. You never say this, but – carefully worded argument was still coming – but your argument is that instruction's wrong, isn't it? Insufficient. So it's insufficient and wrong. I mean, it's wrong as a matter of law, and the trial court was wrong to use it. Well, I don't want to split hairs, and I don't mean wrong in that it was incorrect. I don't know that that was an incorrect definition. Doesn't Supreme Court rule – I think it's 451 or whatever it is – say that the trial court must use a IPI instruction on point on a subject where it's going to – it's determined the jury will be instructed unless it is legally incorrect? Yes. And your position, therefore, must be this is legally incorrect. Right, because it did not – I'm sorry, I wasn't – Well, I was – no, so you're saying it's got to be legally incorrect. Yes. And to what extent – and I, again, looked over your argument, and you said what's wrong, but you haven't said how this should be restructured, what guidance you would have for us if we were to say this was wrong and it should have said the following. Oh, I'm sorry. I thought I did. Maybe I missed it. Well, I'll double-check when I sit down, but I actually have – I'm pretty sure I have what I stated in my brief. And what I suggested – I gave a few suggestions. One of them was as follows. Proximate cause is defined as that cause which produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause. I gave a couple other examples, but I used that one because that one was from an appellate court case, Herman, which defined proximate causes. So essentially my point was this is how courts are going to define it. Maybe we can also define it this way when asking a jury to decide these questions. In fact, at trial, the defense never objected to the IPI instruction. That's correct. And so not only was it wrong, it's plain error? It would have to be. Also, you don't address that in your initial brief. Plain error? Right. Correct. Two weeks ago, the 3rd District, People v. English, had a case in which they were addressing an issue and whether they, in addressing it, they had the question of forfeiture raised. And in the reply brief by the defendant in that case, the defendant says, well, if they didn't raise it sufficiently, then it was ineffective assistance of counsel. This is what the 3rd District said. Almost a century ago, our Supreme Court noted under the rules of this court and its long-settled practice, questions not raised by appellants in the original brief cannot be raised in the reply brief. Contrary practice would permit appellants to argue questions in their reply briefs, as to which counsel for appellees would have no opportunity to reply. These questions, therefore, need not be considered. As the defendant raised the issue of ineffective assistance of counsel for the first time in his reply brief, it need not be considered. It seems to me that's pretty much what we have in this case, as an experienced and sharp counsel before this court, Mr. Delcomen. I suspect you saw plain error as an issue, and shouldn't it be in your initial brief? Actually, I would say no, and the reason I say that is because there's a Supreme Court case and I don't have the name off the top of my head, and I apologize. I'll be happy to supplement it after argument. And as far as I know, it's still good law. It says that we're not required to raise plain error in our reply brief. It's a responsive argument. In fact, it wouldn't make any sense to require an appellant to raise plain error in his opening brief, because the State can essentially forfeit their, not forfeiture, but can waive their, or can forfeit their forfeiture argument out of reason in the first place, and you don't have that if there's a requirement that you have to raise it in your opening brief. And you mentioned that that was a Third District appellate case, and a Third District appellate court, whether they were right or wrong, they can't overrule the Supreme Court. And as far as I know, that Supreme Court case is still good law. Well, there was no dissent at this point, and it seems to me it's a similar kind of point, and I thought I'd raise it for your comments. Yeah, well, and I think my comments are that until the Supreme Court changes its stance on it, the Supreme Court case is controlling, which says that we've not forfeited our plain error argument by not raising it until our reply brief. Of course, one of the difficulties is we don't have the benefit then of Mr. McNeil's brief on plain error, explaining why it is that your argument, which you put in the reply brief, fails on either prong, which he might be able to raise if it had been raised initially. That's certainly true. I mean, I'm not going to dispute that. And, you know, there's some validity to what you've just read me from what that appellate court says. But I think there's, on the other side of the coin, there's validity to what the Supreme Court said in that opinion, in which it said it just doesn't make any sense to require appellants to raise it in their opening brief, because then there is no, then the state doesn't have anything to, to kind of put it bluntly, then we're doing part of the state's job for it in raising an argument, you know, on its behalf. And then the state would never be able to forfeit the forfeiture argument. So I would still, I mean, if the Supreme Court, like I said, there might be reasons to, for the Supreme Court to take a new look at that. I personally don't think so, but as it stands, I would argue that that case is still controlling. And like I said, I'm sorry I don't have the name of that case at my fingertips. Why doesn't the first sentence of the IPI instruction sufficiently address foreseeability, where it says the term proximate cause means any cause which in a natural or probable sequence produced the death? Why doesn't that tell jurors that foreseeability is incorporated within that? Well, I think natural or probable sequence implies to jurors that if it happened in the chain of events, therefore it's a proximate cause. And I don't think that that's what the law is, particularly when you have an intervening cause as we do in this case. And that was another problem with the instruction is that it doesn't, the juror in this case did not know that liability theoretically can be severed because of someone else's third party's intervening act. And that's the crux of this case. So with that in mind, it seems to me difficult to say that that short, limited instruction sufficiently told the jury everything they needed to decide this case. Thank you, counsel. We'll have a chance to address this again in rebuttal. Mr. McNeil? Thank you. May it please the court? Counsel? Counsel? I'll start with the jury instruction argument. First, the defendant did concede in his reply brief that the argument is forfeited. And as explained in my brief, there was no error by the trial court in allowing IPI criminal 23.28A. As Justice Steinman mentioned, that was the exact language used in the definition for proximate cause in this case. And that pattern instruction is taken almost verbatim from the civil instruction, Illinois Pattern Jury Instruction Civil 15.01. Justice Steinman also mentioned the Supreme Court rule that pattern instructions should be used if the court determines it is... Is that 451? I can't remember. Well, whatever. And the Illinois Supreme Court in People v. Hudson used the language from civil 15.01 as its suggestion for a better definition of foreseeability without mentioning the term foreseeability. In that case, there was different language used besides in the natural or probable sequence. I think it was setting in motion a chain of events to... They said that was fine but not ideal to convey the element of foreseeability to the jury. As a better instruction, they mentioned civil 15.01, which of course is the exact language of criminal 23.28A, which was the jury instruction used in this case. More specifically, both instructions in Hudson and here use the language in the natural or probable sequence to convey the element of foreseeability. So the state argues that pursuant to Hudson and the IPI 23.28A jury instruction, defining proximate cause as any cause which in the natural or probable sequence produced the death sufficiently informs the jury and relaxation of the forfeiture rules based on plain error does not apply for that issue. As far as the proximate cause issue, I think it's important to mention that the statute, although not required, I cited a few cases where the state doesn't have the convenience of a statute that the defendant violated, just failed to use reasonable care or whatever the standard is. But in this one, the statute does, if necessary to permit the safe passage of the emergency vehicle, require the cars to stop as well as pull over. Even the defendant mentioned in his initial argument that the defendant was still going 38 miles per hour at the time of the collision. There was also evidence presented that there were no tire marks or anything indicating a sudden reaction to stop or anything like that by the defendant. So in this case, not only did we have a failure to pull over, we also had a failure to stop. As the other three drivers, two in front of Taylor and one directly behind the defendant, all testified that they did, they pulled over and stopped. Mr. Delcomen says you've waived that argument or forfeited that argument. You relied on the statutory violation and you did not, the state never argued that the defendant simply failed to act reasonably. Well, I don't think that the state forfeited that argument. I think that it was easier for the state because the statute does require stopping in that instance. Well, can you change your theory now? But I'm saying that the state at trial thought it would, it's best or easiest to convey a defendant not acting reasonably by clearly showing that he also violated a traffic statute at the same time, which he clearly did here. It was reasonable for the jury to infer these other drivers with similar positions, one of them directly behind the defendant, two of them directly in front of Taylor, all observed the flashing lights of McMillan's patrol car coming at them at a rapid speed. I think the 93 was the speed. They had enough time to not only pull over but to also stop. It was also reasonable to infer, I don't remember the part of the record that states this, but it was reasonable to infer that there was evidence presented that the expert stated, or at least suggested that if the defendant had pulled over as the other cars did, the wreck wouldn't have been a series. If the defendant had pulled over, stopped, turned off his engine, could he be convicted? Not of being driving under the influence was a proximate cause because here I think it was a reasonable inference for the jury to make that him being under the influence was a proximate cause of his violation. Couldn't you argue that if he knows he's drunk when he goes out to the parking lot, if he had just not driven out of the parking lot and gotten on the road, the accident would not have happened? Couldn't you argue that? You could argue that. Of course, there would still be the initial accident, but as far as there was definite evidence presented that the collision with the defendant's car was what caused McMillan's death. What about Mr. Delcomen's argument the accident would have happened even if he pulled off the side of the road because the officer's car came off the side of the road? Again, I don't know how it would, I mean, the expert, I guess, testified and suggested that that would be the case, but if the defendant collided at third hand. It definitely was the case. The officer's car was in part off the road, right? Half off, half on. Half off, half on. So even if the defendant had been on the shoulder. But if he would have stopped when the other car stopped, instead of traveling at 38 miles per hour, he would have been stopped at a different place, the collision. Maybe the car, maybe he would have been, well, it would have been earlier. He would have been stopped earlier than going 38 miles per hour. So the car would have presumably at least been in front of him a little bit, maybe passed all the way in front of him. That sounds like the old argument if Ford didn't make automobiles, there wouldn't be automobile crashes. It was foreseeable when he started to make cars that there were going to be crashes. So it's foreseeable when this guy got on the road that someplace there might be a crash. Well, I think that's why the natural or probable sequence language in the instruction is necessary. I think it was reasonable for the jury to infer that this was a natural or probable sequence. Somebody is intoxicated. As defense counsel mentioned, it was rather quick, but not too quick that the two drivers in front and one driver in back didn't have enough time to stop and pull over. So while it was quick, if the defendant hadn't been intoxicated, it was reasonable for the jury to infer that had he not been intoxicated, he would have been as alert and would have observed the patrol car coming at him with the flashing lights on as the other cars did and avoided the collision. I know that Mr. Delcomen didn't mention the one act, one crime argument, but I did want to mention one thing about it. In his reply brief, he cites the case of People v. Bishop, and I wanted to distinguish that from the present case. In Bishop, the Illinois Supreme Court found that two convictions of aggravated criminal sexual assault couldn't stand when the bodily harm aggravating factors in both were the fact that the victim got pregnant. In that case, both counts alleged the same harm that the defendant placed his penis in the victim's vagina, causing her bodily harm. The bodily harm was the pregnancy in both counts, and there was no evidence and the defendant didn't even argue that she got pregnant more than once, so it was the same pregnancy. The same harm, placing his penis in her vagina, and both counts alleged the same dates the act occurred between. So in other words, there was no difference in the two charges and no requirement of any overt or outward manifestation which could support a different offense or a different element of an offense, whereas here in Count 4, there was a different element that could require a different overt or outward manifestation supporting a different offense, that being that he took drugs in addition to the alcohol. Let me ask you this. He was drunk. Suppose there was evidence that he drank five cans of Budweiser and two cans of Pabst Blue Ribbon. Two different beers, right? Two different acts?  I think that there just needs to be under the influence of alcohol. Why does it matter? If we affirmed on one count, why did the others matter? Well, just for the one act, one crime rule, I want to keep it consistent that this didn't violate it because there was another act required in Count 4 than there was in Count 1 and 2, that being that the defendant had to ingest drugs and be under the influence of drugs as well as alcohol in that count. Were they illegal drugs? Yes, ketamine and MDMA. There was only one condition of drunkenness. What if it required both the drugs and the alcohol to achieve drunkenness? Would you still charge both? I think so because a different act would support a different conviction. Again, that sounds to me like... What if he drank some beer and some whiskey? Two different acts? Again, looking at the charging instrument, him being under the influence of alcohol would be the same act. It wouldn't be a different act. You still have one drunk driver and one deceased officer. True. But there are cases that can be multiple convictions when there's only one victim, as long as there are multiple acts. You do concede that several of the convictions have to be stricken, right? I conceded that either Count 1 or Count 2 needs to be stricken as they're both required for him to be under the influence of alcohol. Okay, thank you, counsel. Mr. Dirkhoffman, any rebuttals, sir? No. Okay. Your Honors, just a statement on... I checked my brief and on pages 31 going on to 32 is where I gave a few suggestions, including that quote that I read from the... Good, thank you. Okay, sure. The other quick point that I wanted to make is, counsel was discussing the failure to yield statute, and I took his argument to be that the defendant was required to stop. What the statute says is that you are required to stop if necessary. Now, certainly I think once another car is coming into your lane of traffic, that would be necessary to stop. But that's necessary to stop independent of any failure to yield. At that point, you're just stopping because you need to. It's not failing to yield the right of way. You just need to stop at that point. But from the time of the first impact to the time of the second impact was 1.23 seconds. The state's expert said you need 1.6 seconds to see, to recognize, and react. So he didn't have sufficient time. He didn't have sufficient time anyway. So my point is, quite simply, at some point during this chain of events it wasn't necessary for him to stop, but when it became clear that it was necessary for him to stop, there was no time for him to stop. But doesn't that get back to Justice Cook's point about how there's a general requirement of driving with reasonable care under all the circumstances he might be presented with, and maybe if your client wasn't drunk, he might have handled the situation better. Well, I don't know that the facts... If Taylor hadn't pulled out into the other lane, the officer would have gone right by, whether Cook, in the position that Cook was in, and nothing would have happened. So this is not a two-car accident. This is Taylor starting it and forcing him over. Now then, with the benefit of hindsight, we can say, well, had you been pulled over, maybe the outcome would have been different. Or stopped. Or stopped. Well, again, it was going to be a collision here no matter what because of Taylor. So I don't think that it's... I just think it's not... Maybe this isn't the most specific answer I can give, but I just don't think it's that simple to be able to say, well, in hindsight, it's really easy to say, had you pulled over, there wouldn't have been an accident. This is not like a situation where there's a car stalled in the road and he just drives into it. This is a boom, boom. Then, well, maybe it would have been different had you acted differently. There are plenty of cases of aggravated DUI cases where it's easy to point at the facts. Cases from this court as well we discussed in the briefs. Where it's easy to look at the facts and say, had you not acted this way, and it's pretty clear that you acted this way because of your intoxication, the outcome would have been different. But this is not that kind of a case. This is a case where the state's expert says, well, maybe. But at the same time, we would have had two cars traveling over 100 miles an hour combined, colliding, no matter what the defendant did. The jury instruction, I think, says, approximate cause need not be the only cause. It need not be the last cause. It seems to me you're saying it had to be the last cause, that this intervening act of Taylor was the cause, and the defendant didn't do anything after that. Well, I'm not quite. He was the last in time. I think the instruction says that so that, let's flip it around and say that Taylor's on trial. Taylor's defense can't be, well, I'm not approximate cause because I wasn't the last in line in the accident. I think that's what that portion of the instruction is referring to. If you're the first actor, but it wasn't your impact that killed the officer, like here, it wasn't his impact. The state's evidence showed that it probably wasn't that first impact that killed him. So Taylor's defense of trial couldn't be. I think that's where that instruction really comes into play. If the impact between Taylor and the officer had occurred 10 seconds before the officer struck the defendant, would you then say that the jury properly could have found approximate cause? Well, following that, I'm assuming that what you're also implying there is that Cook then had sufficient time to react. And if he did and he didn't, then yes. And that's kind of like what I was mentioning in these other cases. Merritt and I think Johnson. Merritt, there was a jogger in the roadway and an intoxicated driver struck the jogger. And the state's evidence of trial was everyone else saw her. There was plenty of time to react. She was slow to react because she was intoxicated. And those are the kind of situations that makes perfect sense. But here, we only have the benefit of hindsight where we're saying, well, had you acted differently, we're not guaranteeing a different outcome. Maybe there would have been a different outcome. But again, this also transitions, I think, into the jury instruction, which is going back to the natural and probable sequence. Even if that adequately defines foreseeability, the jury did not know anything about intervening causation. That's why I suggested that quote from the Herman case that discusses that. And I'd further note, just real briefly in closing, we talked about that Hudson case, the Supreme Court Hudson case in our briefs. In that case, the jury was instructed that. It needed to be a chain of events set in motion by the defendant. I think if the jury in this case were instructed with that instruction and with an instruction regarding intervening causation, the jury would have acquitted the defendant. That's why the instruction is incorrect and not sufficient in this case. Thank you. Thank you, counsel. Court, take this into your advisement. We'll be in recess until tomorrow morning.